# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT CINCINNATI

THOMAS WALKER,

                Petitioner,           :     Case No. 1:22-cv-249

    - vs -                       District Judge Douglas R. Cole
                                Magistrate Judge Michael R. Merz

WARDEN, Chillicothe Correctional
  Institution,

                                :

                Respondent.

# REPORT AND RECOMMENDATIONS

Petitioner Thomas Walker brought this habeas corpus action pursuant to 28 U.S.C. § 2254 to obtain release from his commitment to the custody of Respondent Warden Tim Shoop at the Chillicothe Correctional Institution (Petition, ECF No. 1). On order of Magistrate Judge Chelsey Vascura, to whom this case was initially referred, the Warden through counsel has filed the State Court Record (ECF No. 10) and a Return of Writ (ECF No. 11). Since the Magistrate Judge reference was transferred to the undersigned, Walker has filed a Reply (ECF No. 16) and the case is ripe for decision.

**Litigation History**

On June 9, 2016, the Hamilton County Grand Jury indicted Walker on one count of murder in violation of Ohio Rev. Code § 2903.02(A) with specifications (Count One), one count of murder

1

in violation of Ohio Rev. Code § 2903.02(B) with specifications (Count Two), one count of felonious assault in violation of Ohio Rev. Code § 2903.11(A)(1) with specifications, (Count Three), one count of felonious assault in violation of Ohio Rev. Code § 2903.11(A)(2) with specifications, (Count Four), one count of gross abuse of a corpse in violation of Ohio Rev. Code § 2927.01(B), (Count Five), one count of tampering with evidence in violation of Ohio Rev. Code § 2921.12(A)(1), (Count Six), and one count of having weapons while under disability in violation of Ohio Rev. Code § 2923.13(A)(3),(Count Seven)(Indictment, State Court Record, ECF No. 10, Ex. 1).  A jury convicted Walker on all counts and he was sentenced to twenty-five years to life in prison.

Represented by new counsel, Walker timely appealed to the Ohio First District Court of Appeals, raising the following Assignments of Error:

> 1. The prosecutorial misconduct during closing arguments deprived Mr. Walker of his constitutional rights to due process and a fair trial.
>
> 2. The trial court abused its discretion when it allowed in evidence of prior unrelated alleged acts as it was unfairly prejudicial.
>
> 3. The trial court erred to the prejudice of the Defendant-Appellant as there was insufficient evidence to convict.
>
> 4. The trial court erred to the prejudice of the Defendant-Appellant because the verdict was against the manifest weight of the evidence.
>
> 5. The Defendant was denied effective assistance of trial counsel as guaranteed by Section 10, Article 1, of the Ohio Constitution and the Sixth and Fourteenth Amendments.
>
> 6. The consecutive sentence imposed by the courts is contrary to law.

(Appellant's Brief, State Court Record, ECF No. 10, Exhibit 17, PageID 122).  The First District affirmed (*Id.* at Ex. 19).  Walker failed to timely appeal to the Supreme Court of Ohio, but sought a delayed appeal a year later.  The Ohio Supreme Court allowed the delayed appeal, but declined to

exercise jurisdiction. *Id.* at Ex. 28.  While the direct appeal was pending, Walker filed an Application

to Reopen under Ohio R. App. P. 26(B), pleading the following omitted assignment of error:

> Trial Counsel was ineffective in failing to engage a crime scene reconstruction expert when that is crucial to showing the Order of Events and how the accidental shooting occurred, and how trial attorney sent the Appellant a letter making a promise to engage the crime scene reconstruction expert with the intent to not fulfil denying Appellants right to effective assistance of trial counsel as guaranteed by Section 10, Article 1, of the Ohio Constitution and the Sixth and Fourteenth Amendments to the U.S. Constitution.

(State Court Record, ECF No. 10, Ex. 29, PageID 287-88).   The First District denied the

Application.  *Id.* at Ex. 30.  The State Court Record does not show any appeal to the Ohio Supreme

Court, but the online docket of the Ohio Supreme Court in its Case No. 2021-0535 shows it allowed

a delayed appeal, but then declined to take jurisdiction.

Walker then filed his Petition for Writ in this Court, pleading the following Grounds for

Relief:

> **Ground One**: Trial Counsel was ineffective in not calling expert witnesses, during trial.
>
> **Supporting Facts:** Counsel violated Petitioner's constitutional right to trial by failing to call expert witnesses, as agreed upon.
>
> **Ground Two**: The Prosecutor's misconduct during closing arguments deprived Petitioner of his constitutional right to due process and a fair trial.
>
> **Supporting Facts:** The prosecutorial misconduct during closing arguments deprived Appellant Walker of his constitutional right to due process and a fair trial. By misleading the jury, concerning the facts and evidence the case.
>
> **Ground Three**: The evidence at trial was insufficient to sustain a conviction, constitutional.
>
> **Supporting Facts**: The elements were not ment [sic] of the charged offenses, according to the evidence presented.

**Ground Four**: Fraud upon the court was committed when Police Officer Blank, Officer Bruewer, and Officer John Hein lied about Appellant confessing to the alleged charges evidenced by the transcripts and the fact that suspect who confess to murder are than [sic] arrested for murder not released as an innocent man, in violation of Article I Section 9 & §3 no bill of attainder and Amendment 5 of the U.S. Constitution due process of law which also violates constitution.

**Supporting Facts:** A fraud was committed in the trial court in allowing officers to testify to false accounts, "as facts" when the Court and State were aware of the untruthfulness of the witnesses testimony. Violating Petitioner's constitutional right to due process and trial. Also in allowing 404(B) evidence to prejudice Petitioner in violation of his right to a fair trial.

**Ground Five:** The court of appeals violated Petitioner's right to due process to timely appeal their decision to appeal until after time expired.

**Ground Six:** The consecutive sentence imposed by the court contrary to law.

**Supporting Facts:** The sentences are not just.

**Ground Seven:** The Trial Court abused it's discretion when it allowed improper other bad acts evidence\"Note" This ground is also addressed with the fraud clam.

(Petition, ECF No. 1, PageID 6-17).

# Analysis

Petitioner pleaded seven grounds for relief, but arranged his Traverse around three "propositions of law" which have arguments that address many points.  This Report will first analyze the Grounds for Relief as pleaded.  To the extent the Traverse pleads different or modified claims for relief from the Petition, they are not properly before the Court.  A district court may decline to review a claim a petitioner raises for the first time in his traverse or reply.  *Jalowiec v.*

*Bradshaw*, 657 F.3d 293 (6ᵗʰ Cir. 2011), *citing Tyler v. Mitchell*, 416 F.3d 500, 504 (6ᵗʰ Cir. 2005).

**Ground One:  Ineffective Assistance of Trial Counsel**

Walker asserts his trial attorney provided ineffective assistance of counsel by failing to call expert witnesses, although calling them had been agreed upon.

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.  In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice.  *Berghuis v. Thompkins*, 560 U.S. 370, 389 (2010), citing *Knowles v. Mirzayance*, 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . .  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional

> assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome." *Strickland*, 466 U.S. at 694. See also *Darden v. Wainwright*, 477 U.S. 168, 184 (1986), citing *Strickland, supra.; Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), citing *Strickland, supra*; *Blackburn v. Foltz,* 828 F.2d 1177, 1180 (6th Cir. 1987), quoting *Strickland*, 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable." *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), quoting *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011).

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See *Wong v. Belmontes,* 558 U.S. 15, 27, 130 S. Ct. 383, 175 L. Ed. 2d 328 (2009) (per curiam); *Strickland*, 466 U.S., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. Id., at 696, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." *Id*., at 693, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The likelihood of a different result must be substantial, not just conceivable. Id., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

*Harrington v. Richter,* 562 U.S. 86, 111-112 (2011).

Ohio law provides two possible methods for showing ineffective assistance of trial counsel.

If the claim can be proven from the trial record, it must be raised on direct appeal; failure to do so procedurally defaults the claim under Ohio's *res judicata* rules. *State v. Colombo*, 73 Ohio St. 3d 306 (1995); *State v. Dehler*, 73 Ohio St. 3d 307 (1995). On the other hand, ineffective assistance of trial counsel claims that depend on evidence outside the record must be raised in a petition for post-conviction relief under Ohio Revised Code § 2953.21.

Walker's claim as best the Magistrate Judge understands it is that his trial attorney had agreed to call a crime scene reconstructionist to bolster Walker's own account of how the death of Necole Craig had occurred and that it was an accident.

Walker raised this claim as his Fifth Assignment of Error on direct appeal. Applying the *Strickland* standard, the First District held:

> (¶**65**) Generally, the decision not to call an expert witness does not constitute ineffective assistance of counsel because that decision is solely a matter of trial strategy. *Coleman*, 45 Ohio St.3d at 307-308, 544 N.E.2d 622; *Durgan,* 1st Dist. Hamilton No. C-170148, 2018-Ohio-2310, at ii 43. Because the decision not to present expert testimony may be tactical, the decision of trial counsel to rely on cross-examination of the state's experts did not equate to ineffective assistance of counsel. *See State v. McRae,* 1st Dist. Hamilton No. C-180669, 2020-Ohio-773 ¶ 19.

> {¶**66**} The record shows that Walker's counsel provided him with a diligent and thorough defense. He has not demonstrated that his counsel's representation fell below an objective standard of reasonableness or that, but for his counsel's unprofessional errors, the results of the proceeding would have been otherwise. Therefore, he has failed to meet his burden to show ineffective assistance of counsel. See *Strickland* at 687-689; *Hackney* at ¶¶ 37-38. We overrule Walker's Fifth Assignment of Error.

*State v. Walker,* Case No. C-190193 (Ohio App. 1st Dist. Apr. 22, 2020)(copy at State Court Record, ECF No. 10, Ex. 19, PageID 199-200).

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is

contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. Walker makes no attempt to show that the First District's decision is an objectively unreasonable application of *Strickland*.

When he came to file his Application to Reopen the direct appeal, Walker reframed this claim as a claim of breach of contract by fraud by his trial attorney, who had represented he would present a reconstructionist expert (State Court Record, ECF No. 10, Ex. 29, ¶ 6, PageID 285). In denying the Application, the First District recognized the claim had been presented before on direct appeal. *Id.* at Ex. 30, PageID 298. Because Walker had not relied on the contract and fraud claims on direct appeal, the First District did not rely on *res judicata*. However, the letter in question which shows at least communication between Walker and his attorney on this witness was not part of the record on direct appeal and could not be added to the record and form the basis of a decision on appeal. *Id.* at PageID 300. It was therefore held not to be ineffective assistance of appellate counsel to fail to raise the proposed assignment of error.

Walker adds another copy of the letter as an attachment to his Reply (ECF No. 16, PageID 2129). The letter is dated December 11, 2017, and shows continued preparation for a February 2018 trial, including working with a "ballistics and firearm expert" with the intention of presenting him at trial. The docket sheets also show the court had approved payment to Larry Dehus, a well-recognized local firearms and ballistics expert (Docket Sheets, PageID 308). Thus the record made

in the state courts supports Walker's claim that there had been discussion within the defense team and with the court of presenting a firearms expert[1].

However, by itself, the letter does not show deficient performance by trial counsel. It does not disclose what opinions, if any, the expert was prepared to testify to or include even a draft copy of his report. As the First District recognized, whether or not to present an expert is within the discretionary judgment of a defense attorney. If Mr. Dehus provided an exonerating report which was not part of the record on direct appeal, it was incumbent on Walker to present that by way of a petition for post-conviction relief under Ohio Revised Code § 2953.21, but no such petition has ever been filed in this case. Because of the one-year statute of limitations on filing such a petition, Walker has procedurally defaulted the claim.

In connection with his First Ground, Walker relies in part on *McCoy v. Louisiana*, 584 U.S. ___, 138 S. Ct. 1500 (2018), where the Supreme Court added that an attorney's admitting guilt when client wants to oppose it, even when evidence is overwhelming, is a structural error requiring reversal. The Court did not analyze the claim under ineffective assistance of trial counsel doctrine, but said it was a matter of client autonomy, along with such decisions as whether to accept appointed counsel, whether to try the case to a jury, or whether to accept a plea agreement. The Supreme Court has not extended *McCoy* to the situation presented here and has generally interpreted the category of structural error very narrowly.

Accordingly, the claim of ineffective assistance of trial counsel is barred by required deference to the First District's opinion on direct appeal and by failure to file a petition for post-conviction relief. Ground One should be dismissed with prejudice.

---

[1] Thus this Court can consider this evidence without breach of the ruling in *Cullen v. Pinholster*, 563 U.S. 170 (2011).

**Ground Two:  Prosecutorial Misconduct**

In his Second Ground for Relief, Walker claims the prosecutor made misleading statements in closing argument, depriving him of due process of law.   This claim was Walker's First Assignment of Error on direct appeal and the First District decided it as follows:

> {¶38} Walker takes issue with two comments in the prosecutor's rebuttal argument. First, the prosecutor stated, "[A]nd I am not making up things. Please use your collective memory and not-I don't-it is not my job to just come here and lie to you."
>
> {¶39} The prosecutor's comment must be viewed in context. In his argument, defense counsel had implied that the police had done a slip-shod investigation and that the state had fabricated facts because it had insufficient evidence. In rebuttal, the prosecutor talked about how Walker's stories to the police did not match the scientific evidence. She then stated, "I submit to you, and some people don't need to change their stories. They don't have one. *. • • I want to talk about Nicole now. Necole only had one story. That story is she loved the wrong person. You heard from the family • * *. They believed that Walker was verbally abusing Necole, physically harming her as well." Defense counsel objected, saying, "It's not the evidence testified to."
>
> {¶40} The trial court overruled the objection, and then the prosecutor continued with "With Necole before Walker-and I am not making up things. Please use your collective memory and not-I don't-it is not my job to just come up here and just lie to you." After the trial court overruled Walker's objection and refused to give a curative instruction, the prosecutor discussed the family's testimony about Necole's changed behavior after she met Walker.
>
> {¶41} The prosecutor's comment was a direct response to the defense counsel's argument, and thus, it was not improper. *See State v. Hopkins,* 2018-Ohio-1864, 112 N.E.3d 98, ¶ 97-99 (2d Dist.); *State v. Carter,* 2017-0hio-1328, 88 N.E.3d 513, ¶ 23 (1st Dist.). The rest of her statements were fair comments on the evidence.
>
> {¶42} Next, Walker takes issue with the following comment in the prosecutor's rebuttal argument. She stated, "That is how he felt about Necole. Not this little, ooh, boo-boo in court where he is [c]rying. Where never did he ever show any remorse in any of his three

interviews." Prior to this statement, the prosecutor was talking about Walker's text messages with degrading comments about Necole.

{¶43} First, Walker did not object to this comment, so we review it for plain error. *State v. Underwood*, 3 Ohio St.3d 12, 13, 444 N.E.2d 1332 (1983); *State v. Thomas,* 1st Dist. Hamilton No. C-120561, 2013-Ohio-5386, ¶ 38. The statement was a fair comment on the evidence. Further, it is not improper for a prosecutor to comment on the defendant's lack of remorse. See *State v. Bryan*, 101 Ohio St.3d 272, 2004-Ohio-971, 804 N.E.2d 433, ¶ 184; *State v. Awkal,* 76 Ohio St.3d 324, 335-336,667 N.E.2d 960 (1996). We cannot hold that the comment was improper much less that it rose to the level of plain error.

(¶44) Further, even if the prosecutor's comments were improper, they were two isolated remarks in an otherwise proper argument. "Isolated comments by a prosecutor are not to be taken out of context and given their most damaging meaning." *State v. Carter,* 89 Ohio St.3d 593, 603, 734 N.E.2d 345 (2000). None of the comments that Walker complains about were so egregious as to affect his substantial rights or deny him a fair trial. Further, the trial court instructed the jury that opening and closing arguments are not evidence. We presume that the jury followed that instruction. See *State v. Gamer*, 74 Ohio St.3d 49, 59, 656 N.E.2d 623 (1995); *State v. Bell,* 2015-Ohio-1711, 34 N.E.3d 405, ¶ 21 (1st Dist.). Therefore, we overrule Walker's first assignment of error.

*State v. Walker, supra.*

With respect to that portion of the prosecutor's comments to which no objection was made, any claim about them is procedurally defaulted for lack of a contemporaneous objection. An Ohio state appellate court's review for plain error is enforcement, not waiver, of a procedural default. *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012); *Jells v. Mitchell,* 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Hinkle v. Randle*, 271 F.3d 239 (6th Cir. 2001).

With respect to the remaining comments, Walker has not shown that the First District's decision on the merits is an objectively unreasonable application of clearly established Supreme

11

Court law.  See *Darden v. Wainwright*, 477 U.S. 168, 184 (1986); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, (1974).  It is therefore entitled to deference under the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA").  Walker's Second Ground for Relief should therefore be dismissed with prejudice.

**Ground Three:  Insufficient Evidence**

In his Third Ground for Relief, Walker asserts he was convicted on insufficient evidence. He presented this as his Third Assignment of Error on direct appeal and the First District decided it as follows:

> {¶52) In his third assignment of error, Walker contends that the evidence was insufficient to support his conviction for murder. He argues that the evidence failed to show that he purposefully caused the victim's death because the death was the result of an accident. This assignment of error is not well taken.
>
> {¶53} R.C. 2903.02(A) provides that "[n]o person shall purposely cause the death of another* * *." A person acts purposefully when "it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A).
>
> {¶54} A person is presumed to intend the natural, reasonable and probable consequents of his or her acts. *State v. Johnson*, 56 Ohio St.2d 35, 39, 381 N.E.2d 637 (1978); *State v. Robinson,* 132 Ohio App.3d 830, 838, 726 N.E.2d 581 (1st Dist.1999). The determination of whether the accused acted with the required culpable mental state must be gathered from the surrounding facts and circumstances. *Johnson* at 38; *Robinson* at 838; *State v. Heard,* 1st Dist. Hamilton No. C-980443, 1999 WL 636555, *7 (Apr. 13, 1999).
>
> {¶55} "[A]n intent to kill may be presumed where the natural and probable consequence of the wrongful act done is to produce death. It may be deduced from the surrounding circumstances, including

the instrument used, its tendency to destroy life if designed for that purpose, and the manner of inflicting the wound." *State v. Robinson,* 161 Ohio St. 213, 218-219, 118 N.E.2d 517 (1954).

{¶[56]} The text messages sent by Walker to the Necole and her family members showed that he had threatened to kill her in the past. When Walker turned himself in to the police, his first statement was that he had shot and killed his girlfriend. He made no mention of an accident. The story that he later told police did not match with the scientific evidence. If the shooting had happened as Walker claimed, which he said was at close range, there likely would have been fouling or stippling on Necole's head or face, but none was found. Necole's family testified that she did not like guns, she did not know how to use one, and they had never seen her hold one. Additionally, the coroner found substantial bruising on the side of Necole's face, indicating blunt-force trauma.

{¶57} The evidence also showed that Walker was furious when Necole did not answer his calls or texts shortly before the shooting. Additionally, the delay in reporting the shooting, his tampering with evidence at the scene, his erasure of text messages from his phone, and his attempts to locate Necole's phone all indicate a consciousness of guilt and show that he acted purposefully. Finally, in his interview with the police, the investigating detective indicated that Walker's answers about the shooting were "prepared," but when he was pressed, the details of his story were inconsistent and changed over time.

{¶58) Walker relies heavily on the fact that Necole's DNA was found on the gun. But this argument ignores the fact that Walker had two days to tamper with the crime scene and spent time watching true-crime shows. The scientific evidence showed that DNA could transfer from surface to surface, and Walker could have easily transferred Necole's DNA onto the gun.

{¶159} The state's evidence regarding Walker's intent was circumstantial, but circumstantial and direct evidence have the same probative value. *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph one of the syllabus; *State v. Durgan,* 1st Dist. Hamilton No. C-170148, 2018-Ohio-2310, ¶ 39. Our review of the record shows that a rational trier of fact, after viewing the evidence in a light most favorable to the prosecution, could have found that the state proved beyond a reasonable doubt all of the elements of murder. Therefore, the evidence was sufficient to support the conviction. See *Jenks* at paragraph two of the syllabus; *State v. Hackney,* 1st Dist. Hamilton No. C-150375, 2016-Ohio-4609, ¶ 29.

> {¶160} Walker argues that his version of events was more credible than the state's evidence. But in deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses. *Wright*, 2017-Ohio-1568, 90 N.E.3d 162, at ¶ 58. Consequently, we overrule Walker's third assignment of error.

*State v. Walker, supra*.

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(*en banc*). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020) (quoting *Jackson*). This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* (quoting *Jackson*, 443 U.S. at 324). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra.*

As the quoted language makes clear, the First District decided Walker's sufficiency claim on the merits using the *Jackson v. Virginia* standard. Walker's burden here, then, is to show the First District unreasonably applied *Jackson*. He has not done so.

14

In particular Walker argues that there are no eyewitnesses, but that it is not uncommon in homicide cases.  "Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt." *United States v. Ramirez*, 635 F.3d 249, 256 (6th Cir. 2011), quoting *United States v. Stone*, 748 F.2d 361, 362 (6th Cir. 1993); *United States v. Wettstain,* 618 F.3d 577, 583 (6th Cir. 2010); *United States v. McAuliffe,* 490 F.3d 526, 537 (6th Cir. 2007); *United States v. Kelley,* 461 F.3d 817, 825 (6th  Cir. 2006); *United States v. Reed,* 167 F.3d 984, 992 (6th Cir. 1999); *United States v. Beddow,* 957 F.2d 1330, 1334 (6th Cir. 1992).  Walker was certainly free to argue that his version of what happened was more credible than the State's, but questions of credibility are for the jury to decide.  The First District's decision on the sufficiency of the evidence is not an objectively unreasonable application of *Jackson* and is therefore entitled to deference under the AEDPA.  Ground Three should be dismissed with prejudice.

**Ground Four:  Fraud on the Court:  Police Officer Perjury**

In his Fourth Ground for Relief, Walker claims Cincinnati Police Officers Blank, Bruewer, and Hein lied about Appellant's "confessing" to the alleged charges, thereby committing fraud on the court.

Respondent asserts this claim is procedurally defaulted because it was not raised on direct appeal to the First District, but only on appeal to the Ohio Supreme Court (Return, ECF No. 11, PageID 339).  Walker makes no response and the defense is well taken:  the Ohio Supreme Court will not consider errors not raised in the court of appeals.  *State v. Phillips*, 27 Ohio St.2d 294 (1971).

Even without this procedural default, the claim is without merit.  The First District

summarized the relevant testimony:

> ¶12) The record shows that on Monday, May 30, 2016, at about 10:30 p.m., Cincinnati Police Officer Barnabus Blank was working the front desk at District One when Walker walked in and announced that "I got into it with my girl and I shot and killed her." Walker gave him a house key and said, "You will need this to get to the body."
>
> ¶13) Officer Blank went into the lobby and put handcuffs on Walker. Blank described Walker as calm, but also "sweaty and clammy," and "a little bit out of breath." Blank saw that Walker had a gunshot wound to his left leg, so he called an ambulance.
>
> ¶14) Walker told Blank that the police would find the body at 705 Glenwood Avenue on the second floor. Blank recognized the address that Walker gave him as being located in District Four. He arranged for a squad to respond to that address, and also called District Four to give them "a heads up."
>
> ¶15) Police Officer Alisha Bruewer was standing near the front desk when Walker walked into District One. She said that Walker was sweating profusely and appeared to be nervous. Walker stated that "it took him a little while because he had to work himself up to bring himself down to the district," and that "he and his wife got into an altercation and he had a bullet stuck in his leg." He also stated that the shooting had occurred on the Saturday before.
>
> ¶16) Sergeant John Hein was also present at District One. He photographed the gunshot wound when the paramedics cut off Walker's pants leg. Hein said that "the coloring was definitely of interest," the wound was not bleeding, and it appeared to be "scabbed over already." The bullet was still underneath the skin, and the colors of the bruises indicated that some time had elapsed since the wound had been inflicted.

*State v. Walker, supra.*

A determination of facts by a state court is presumed correct in later habeas corpus proceedings unless the petitioner shows by clear and convincing evidence from the state court record that the finding is clearly erroneous. Walker has not even attempted to make that showing. Instead he asserts these statements must be perjurious because the police let him leave the station

instead of immediately charging him and keeping him in custody.  He was certainly free to make

that argument to the jury, but he had no evidence to back it up, no expert in police procedure to

testify a person in his circumstances would not have been allowed to leave.  Nor does he even

point to any person present in the District One offices to rebut the account these officers gave of

what Walker said.  The claim that the officers' testimony is perjurious is based on Walker's

assertion alone.

Ground Four should be dismissed as procedurally defaulted and also without merit.


**Ground Five:  Denial of Due Process:  Failure to Serve Notice of Decision**


In his Fifth Ground for Relief, Walker claims he was denied due process when he was not

served with notice of the decision of the court of appeals on his Application to Reopen until it was

too late to appeal to the Ohio Supreme Court.  Walker offers as proof a letter from the ODRC

which shows that the institution's mail log shows no mail received by Walker from the First

District Court of Appeals from January 20, 2021, until May 13, 2021 (Petition, ECF No. 1, PageID

25).  The State Court Record shows the 26(B) Application was denied on January 20, 2021 (ECF

No. 10, PageID 298).  The docket of the court of appeals in this case records mailing a copy of the

decision to all parties on the date of decision, January 20, 2021, *Id.* at Ex. 32, PageID 313.

However, it also shows receipt of a copy of Walker's Notice of Appeal to the Supreme Court of

Ohio on April 28, 2021, in that court's Case No. 2021-0535.  *Id.*  The Supreme Court's docket in

that case shows Walker filed a Notice of Appeal in that court on April 27, 2021. *Id.* at PageID 315.

At the same time Walker filed a motion for delayed appeal because of the COVID 19 pandemic[2]

---

[2] The Ohio Supreme Court does not in the ordinary course allow delayed appeal in collateral proceedings.  Special
rules were, however, adopted, to deal with the pandemic.

which the Supreme Court granted.  On June 16, 2021, the Supreme Court dismissed the appeal for want of prosecution.  On reconsideration the court granted Walker another extension of time to file a memorandum in support of jurisdiction.  Although he filed the required memorandum, the court eventually declined to exercise jurisdiction.

In sum, the record shows the First District mailed a copy of its decision, but Walker did not receive it until May 14, 2021.  Nevertheless he somehow found out about the decision in time to appeal on April 27, 2021.  Although that was untimely, the Supreme Court of Ohio did not hold the untimeliness against him (See Supreme Court Docket for its Case No. 2021-0535, available at www.supremecourt.ohio.gov/clerk/ecms/#/caseinfo/2021/0535, visited January 19, 2023).

Walker has offered no authority for the proposition that a state appellate court has a due process obligation to serve a copy of its decisions on appellants.  Assuming there is such an obligation, the record before this Court shows the First District did give notice; what happened to Walker's copy is unknown, although this Court had many difficulties with prisoner mail at the height of the pandemic.  Even if the First District had failed to mail a copy, it did no harm because the Ohio Supreme Court allowed Walker to file.  From the record, both that filed by the Attorney General and that available online, the Magistrate Judge finds any possible constitutional error was harmless.  Therefore Ground Five should be dismissed on the merits.

**Ground Six:  The Consecutive Sentences Are Contrary to Law and Unjust**

In his Sixth Ground for Relief, Walker claims the consecutive sentences imposed on him are contrary to law and unjust.

Respondent argues this Ground for Relief raises only state law issues and therefore it is not

cognizable in habeas corpus (Return, ECF No. 11, PageID 330-31).  Walker makes no response in his Traverse.

Federal habeas corpus is available only to correct federal constitutional violations.  28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983).  "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); see also *Elmendorf v. Taylor*, 23 U.S. (10 Wheat.) 152, 160 (1825)(Marshall C. J.); *Bickham v. Winn*, 888 F.3d 248 (6th Cir. Apr. 23, 2018)(Thapar, J. concurring).

While Ohio law requires specific findings by a trial judge before consecutive sentences may be imposed, that requirement is a matter of state statute, not federal constitutional law.  "A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable." *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993), overruled in part on other grounds by *Thompson v. Keohane,* 516 U.S. 99 (1995).  As Respondent points out, the Supreme Court has held no special jury findings are constitutionally necessary to justify consecutive sentences. *Oregon v. Ice*, 555 U.S. 160 (2009).  Ground Six should be dismissed with prejudice.

**Ground Seven:  Trial Court Abuse of Discretion by Allowing Evidence of "Other Bad Acts"**

In his Seventh Ground for Relief, Walker claims the trial court abused its discretion by

admitting evidence of other bad acts.  Respondent asserts this claim is not of constitutional import.

Walker raised this claim as his Second Assignment of Error on direct appeal and the First District decided the other acts evidence was admissible under Ohio R. Evid. 404(B) not to prove Walker's bad character, but to show his intent to kill, an essential element of murder.

The question of the admissibility of other acts evidence is a question of state law.  Conversely, a claim of abuse of discretion does not state a federal constitutional claim.  Put another way, abuse of discretion is not a denial of due process.  *Sinistaj v. Burt,* 66 F.3d 804 (6th Cir. 1995). Indeed Walker did not argue this claim as a constitutional claim in the First District and the United States Supreme Court has never held that admission of other acts evidence violates the Constitution. "There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence."  *Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir. 2003), noting that the Supreme Court refused to reach the issue in *Estelle v. McGuire*, 502 U.S. 62 (1991).

Ground Seven should be dismissed for failure to state a claim upon which habeas corpus relief can be granted.

**Conclusion**

In accordance with the foregoing analysis, the Magistrate Judge respectfully recommends the Petition herein be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and

should not be permitted to proceed *in forma pauperis*.


January 20, 2023.

## NOTICE REGARDING OBJECTIONS


Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. #


s/ *Michael R. Merz*
United States Magistrate Judge
