# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

**THOMAS WALKER,**

   **Petitioner,**

  **v.**

**WARDEN, CHILLICOTHE
CORRECTIONAL INSTITUTION,**

   **Respondent.**

**Case No. 1:22-cv-249**

**JUDGE DOUGLAS R. COLE**
**Magistrate Judge Merz**

## <u>OPINION AND ORDER</u>

Petitioner Thomas Walker shot and killed his girlfriend, Necole Craig, and left her body to decompose in their apartment for days before turning himself in to the police. In connection with those heinous acts, the State of Ohio charged Walker with murder, assault, gross abuse of a corpse, tampering with evidence, and having a weapon while under a disability. A jury convicted Walker on all counts. Walker now seeks a writ of habeas corpus, alleging that several errors infected his trial. After a response and reply, Magistrate Judge Merz issued a Report and Recommendation (R&R, Doc. 17) advising the Court to dismiss Walker's petition with prejudice. Walker objected. (Doc. 19). After this Court recommitted the matter to the Magistrate Judge to consider Walker's objections, Magistrate Judge Merz issued a Supplemental R&R, once again recommending this Court dismiss the petition with prejudice. (Doc. 21). Walker again objected. (Doc. 22). The Court **OVERRULES** Walker's objections (Docs. 19, 22), **ADOPTS** the R&R (Doc. 17), and Supplemental R&R (Doc. 21), and **DENIES** Walker's Petition (Doc. 1).

# BACKGROUND

## A.  The Incident

On May 30, 2016, at around 10:30 p.m., Thomas Walker walked into a Cincinnati police station appearing nervous, clammy, and sweating profusely. *State v. Walker*, 2020-Ohio-1581, ¶¶ 2–3, 5 (1st Dist.).[1] Walker told the officer at the front desk, Officer Blank, that he "got into it with [his] girl" and that he shot and killed her. *Id.* ¶ 2. Walker gave Blank a house key and told him he would need the key to find the body. *Id.* ¶¶ 2, 4. He then stated that he had a bullet in his leg because of an altercation he had with his "wife."[2] *Id.* ¶ 5. Officers cut off Walker's pant leg and uncovered a gunshot wound in his left leg. *Id.* ¶¶ 3, 6. The gunshot wound was old—it was scabbed over and not bleeding, but the bullet was still lodged directly underneath the skin. *Id.* ¶ 6.

Within fifteen minutes of Walker's arriving at the police station, the police proceeded to Walker's home. *Id.* ¶ 8. As soon as they walked in, the officers smelled the decomposing body of Necole Craig (who also went by Necole Jones).[3] *Id.* She was covered in dried blood and flies, and her shirt was pulled over her head. *Id.* On the couch lay a gun. *Id.* ¶ 9. Written on the bedroom wall was a message that read, "Necole Jones, 1974–2016 7:12 AM *** Her fam [sic] did everything they could to see

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), the Court presumes that the Ohio court's determination of the facts is correct and therefore cites the Ohio Court of Appeals for the relevant factual background here. *Cf. Shinn v. Ramirez*, 596 U.S. 366, 372–73 (2022) (citing the corresponding Arizona Supreme Court opinion for the case's factual background).

[2] The woman to whom he was referring, Necole Craig, was not actually his wife but rather his longtime girlfriend.

[3] As the opinion also refers to various other members of the Craig family, the Court will refer to Necole and the other members of the Craig family by their first names to avoid confusion.

us unhappy. They won!!" *Id.* ¶ 8. Investigators discovered dried vomit with what appeared to be pills in it on the floor. *Id.* ¶ 9. A detailed search revealed a cellphone (later determined to be Necole's) under the couch but no bullet holes in the apartment. *Id.* ¶¶ 9–10. The search did, however, turn up a box of ammunition with Walker's fingerprints on it. *Id.* ¶ 10. Investigators also swabbed the gun for DNA, taking a sample from the handle grip and the trigger. *Id.* ¶ 11. But the samples were too small to process alone, so the crime lab combined the samples for DNA analysis. *Id.* The samples tested positive for both Necole's DNA (as the major contributor) and another minor DNA contributor, who was unidentifiable due to the lack of sufficient genetic material. *Id.*

The coroner who examined Necole's body concluded that she had been dead for "a couple of days." *Id.* ¶ 12. The coroner found a gunshot entrance wound on the right side of Necole's head and an exit wound on the left side. *Id.* He found no soot, stippling, or any other evidence suggesting the gun was fired from close or intermediate range. *Id.* On Necole's head, the coroner also discovered substantial bruising near her temple which suggested she had suffered blunt force trauma. *Id.* ¶ 13. She further showed bruising on her right arm and wrist. *Id.* Although her stomach was empty of pills, she tested positive for tramadol, a pain medication, along with alcohol and cocaine. *Id.*

Officers examined both Walker's and Necole's cellphones. *Id.* ¶ 15. Many texts on Walker's phone had been deleted, but officers found many text messages on Necole's phone that Walker had sent to her, which were abusive and threatening. *Id.*

¶¶ 15, 34. In several of the messages, Walker threatened to beat her and referenced incidents when he had beaten her previously. *Id.*

Walker sat for multiple interviews with the police. *Id.* ¶ 31. He insisted the shooting was accidental. *Id.* Under his telling, Necole had been drunk and possibly suicidal, and Walker had attempted to wrestle the gun from her grasp. *Id.* During the struggle—Walker claimed—the gun fired through Necole's head and into his leg. *Id.* ¶ 32.

Ultimately, the State of Ohio charged Walker in a seven-count indictment with one count of intent-to-kill murder (Count 1), one count of felony murder (Count 2), one count of felonious assault (Count 3), one count of felonious assault with a deadly weapon (Count 4), one count of abuse of a corpse (Count 5), one count of tampering with evidence (Count 6), and one count of possessing a firearm while under a disability[4] (Count 7). (Doc. 10, #46–52).

## B.    The Trial

Before trial, the State of Ohio filed a Notice of Intention to Use Evidence pursuant to Ohio Rule of Evidence 404(B)(2), which detailed the prosecution's plan to introduce evidence of Walker's history of abuse and violence towards Necole to prove that her death did not result from a mistake or accident. (*Id.* at #65, 85–95). In accordance with that notice, the State called Necole's mother, daughter, and sister as witnesses at the trial. *Walker*, 2020-Ohio-1581 at ¶ 16. Necole's mother, Stella Craig,

---

[4] The indictment charged that Walker had previously been convicted of a felony. (Doc. 10, #52).

testified that after Necole started dating Walker, she interacted less with the family, became more somber, and began wearing long sleeves and pants to cover marks and scratches on her limbs. *Id.* ¶¶ 16–17. Stella stated that Walker would often call her (Stella's) cellphone and threaten her. *Id.* ¶ 18.

Stella also testified that two months before Necole's death, Stella saw that Necole was missing a tooth. *Id.* ¶ 19. Stella recalled that she became upset and "flipped out" because she believed Walker was responsible. *Id.* Stella lastly testified that while on a trip to Lexington, Kentucky, for a family graduation, Stella received the news that Necole had died. *Id.* ¶ 20. Upon hearing the news, Stella exclaimed, "[h]e finally did it, … he killed her." *Id.*

Necole's daughter, Amanda, testified to many of the same facts. She recounted how Necole would try to cover her limbs, had changed demeanor since dating Walker, and had lost a tooth. *Id.* ¶¶ 21–23. She also testified that Necole did not like guns, did not know how to load or use a gun, and had never been violent or suicidal. *Id.* ¶ 25.

Necole's sister, Mequita, described a phone call with Necole during which Necole whispered while speaking with her. *Id.* ¶ 27. During that phone call, Mequita heard background noise until suddenly Walker was on the phone instead of Necole. *Id.* Walker cursed and called Mequita names. *Id.* At some point afterward, Walker texted Mequita that Necole would be returned to her family "in a body bag." *Id.*

After both the State's and defense's cases in chief, the parties gave closing arguments. During the prosecutor's closing argument, she claimed that Walker's

story of how Necole was shot did not match the scientific evidence and that he had changed his story between the police interviews and the trial. *Id.* ¶ 39. She then stated "I want to talk about Necole now. Necole had one story. That story is she loved the wrong person. You heard from the family … . They believed that Walker was verbally abusing Necole, physically harming her as well." *Id.* In response to this statement, Walker's counsel objected arguing that the prosecutor's recounting of Necole's family's testimony was inaccurate. *Id.* The trial court overruled the objection, and the prosecutor, in response to Walker's counsel's accusation, stated, "I am not making up things. Please use your collective memory and not—I don't—it is not my job to just come here and just lie to you." *Id.* ¶ 40. Walker's counsel once again objected to this statement, and the trial court overruled that second objection. *Id.* Later during the closing argument, the prosecutor commented on Walker's lack of remorse during his interviews with police, stating: "That is how he felt about Necole. Not this little, ooh, boo-hoo in court where he is [c]rying. Where never did he ever [sic] show any remorse in any of his three interviews." *Id.* ¶ 42.

The jury convicted Walker on all counts. (Doc. 10, #110–16). After merging the duplicative counts, the state trial court sentenced him to an indefinite term of 18 years to life imprisonment on Count 1 (15 years for the underlying murder and three years on a specification of having used a deadly weapon in the process), to 12 months imprisonment on Count 5, and to two 36-month terms of imprisonment on Counts 6–7, all to be served consecutively to each other for a total term of 25 years to life in prison. (*Id.* at #117–18).

### C.    Procedural History

Walker appealed his conviction and raised six assignments of error: that (1) the prosecutor violated his due process rights by making improper statements during her closing argument; (2) the trial court abused its discretion by allowing evidence of Walker's prior bad acts, specifically his violent history with Necole; (3) Walker was convicted on insufficient evidence; (4) Walker's conviction was against the manifest weight of the evidence; (5) Walker's counsel was ineffective for failing to call a crime scene reconstruction expert; and (6) his consecutive sentence was contrary to law. (*Id.* at #131–48). The Ohio Court of Appeals overruled Walker's assignments of error and affirmed his conviction on April 22, 2020. *Walker*, 2020-Ohio-1581. On July 9, 2020, Walker applied, under Ohio Appellate Rule 26(B), to reopen his direct appeal to present new evidence for his ineffective assistance of counsel claim. (Doc. 10, #284–93). The Ohio Court of Appeals denied his application on January 20, 2021. (*Id.* at #298–300).

Meanwhile, because of prison mailing system delays caused by the COVID-19 pandemic, Walker did not timely and properly file his notice of appeal before the Ohio Supreme Court. (*Id.* at #206, 212, 216). So he moved for a delayed appeal, which the Ohio Supreme Court granted on May 10, 2021, giving him thirty additional days to file a memorandum in support of jurisdiction. (*Id.* at #205–09, 242). But Walker once again missed the deadline, which prompted him to ask for a second extension of time to file a belated appeal. (*Id.* at #243–45). The Ohio Supreme Court once again granted him leave on August 17, 2021, and offered him another thirty days. (*Id.* at #250).

Walker then timely filed a Memorandum in Support of Jurisdiction in accordance with Ohio Supreme Court Practice Rule 7.02 on September 10, 2021. (*Id.* at #251–65). In his memorandum, Walker raised two new grounds for relief: (1) a testifying officer committed fraud on the court by committing perjury at trial; and (2) a due process violation arising from the purported failure of the Ohio Court of Appeals to serve Walker with the judgment denying his application to reopen his appeal properly. (*Id.* at #260–62). The Ohio Supreme Court declined to take jurisdiction over the appeal on December 14, 2021. (*Id.* at #283). He never filed a postconviction petition under Ohio Revised Code § 2953.21.

Walker then filed a federal habeas petition in this Court, raising seven grounds for relief: (1) his trial counsel was ineffective for not calling a crime scene reconstruction expert; (2) the prosecutor's misconduct during closing argument deprived him of a fair trial; (3) the evidence at trial was insufficient to support his conviction; (4) the police officers who testified at trial committed fraud upon the court by perjuring themselves; (5) the Ohio Court of Appeals violated Walker's due process rights by failing to provide him with timely service of its decision denying leave to reopen his appeal; (6) Walker's consecutive sentence was contrary to law; and (7) the trial court abused its discretion by allowing evidence of Walker's prior bad acts introduced at trial. (Doc. 1, #6–17). (Walker had not fairly presented two of those grounds—grounds 4 and 5—in his state court proceedings, a point to which the Court returns below.) The State of Ohio filed a Return of Writ, (Doc. 11), and Walker filed his Traverse, (Doc. 16).

8

Magistrate Judge Merz then issued an R&R advising the Court to dismiss Walker's habeas petition with prejudice. (Doc. 17). Walker objected to portions of that R&R. (Doc. 19). The Court then recommitted the matter to the Magistrate Judge to consider Walker's objections, (Doc. 19), to the initial R&R, (Doc. 20), and Magistrate Judge Merz did so—filing a Supplemental R&R once again advising the Court to dismiss Walker's petition with prejudice, (Doc. 21). Walker once again objected. (Doc. 22). Accordingly, the matter is ripe for review.

## LEGAL STANDARD

When a party properly objects to a Magistrate Judge's R&R, the Court reviews the R&R de novo. *Williams v. Parikh*, ___ F. Supp. 3d ___, 2023 WL 8824845, at *2 (S.D. Ohio 2023). But that review extends only to "any portion to which a proper objection was made." *Bates v. Ohio Dep't of Rehab. & Corr.*, No. 1:22-cv-337, 2023 WL 4348835, at *1 (S.D. Ohio July 5, 2023) (citation omitted). For the unobjected portions, the Court reviews the R&R for clear error. *See Redmon v. Noel*, No. 1:21-cv-445, 2021 WL 4771259, at *1 (S.D. Ohio Oct. 13, 2021) (citing the advisory committee notes to Federal Rule of Civil Procedure 72(b)).

But this action is not merely a federal suit first considered by a magistrate judge. Rather, Walker seeks a writ of habeas corpus, which requires the Court to collaterally review a state court judgment and the underlying state court decisions supporting that judgment. That review is highly constrained by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). AEDPA affects the Court's review in several ways.

First, AEDPA serves as a gatekeeper by requiring a petitioner to exhaust his substantive claims in the courts of the state in which he is confined. 28 U.S.C. § 2254(b)(1). Beyond AEDPA's textual exhaustion requirement, the Supreme Court has found that the comity principles undergirding the exhaustion rule—allowing a state court to address the merits of a constitutional claim "in the first instance"— requires a federal court to dismiss claims that are technically exhausted (in the sense that there is no further available avenue for state court review), but that a state court did not adjudicate on the merits (or would not adjudicate on the merits now) because the petitioner failed to follow a state procedural rule. *Davila v. Davis*, 582 U.S. 521, 527–28 (2017) (citation omitted). A petitioner is said to have "procedurally defaulted" such claims. *See Coleman v. Thompson*, 501 U.S. 722, 729–32 (1991). And the existence of the adequate and independent state ground (e.g., a state's procedural rule against hearing untimely claims) for denying the petitioner's claim generally prevents federal review of it. *Id.* at 732. That said, the procedural default doctrine is not an inexorable rule. A federal court may adjudicate a procedurally defaulted claim if the petitioner shows both "cause for the default and prejudice from a violation of federal law." *Martinez v. Ryan*, 566 U.S. 1, 10 (2012).

Second, even as to those claims that the federal court may consider, AEDPA still requires the court to show significant deference to the state court's decision. If the state court has adjudicated a given claim on the merits, a federal court may grant habeas relief only if the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States," or if the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1)–(2). And as to the latter, a state court decision unreasonably applies federal law only when it is impossible for "fairminded jurists" to disagree that the state court decision conflicted with Supreme Court precedent. *Harrington v. Richter*, 562 U.S. 86, 101–02 (2011).

Third, AEDPA limits the materials a federal court may consult when determining whether the state court decision was unreasonable—both as to facts and law. As to facts, a federal court may not hold an evidentiary hearing unless a habeas claim relies on "a new rule of constitutional law" or "a factual predicate that could not have been previously discovered through the exercise of due diligence," 28 U.S.C. § 2254(e)(2)(A), or the factual record shows, by clear and convincing evidence, the petitioner is actually innocent, *id.* § 2254(e)(2)(B). Absent any evidentiary hearing, the federal court's review is limited to the "record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). As for the law, AEDPA allows a federal court to grant relief only if the state court unreasonably applied federal law, "*as determined by the Supreme Court of the United States.*" 28 U.S.C. § 2254(d)(1) (emphasis added). In other words, lower federal court precedent, even if a state court misapplied—or even contradicted—it, cannot serve as a ground for habeas relief. *Kernan v. Cuero*, 583 U.S. 1, 8 (2017). And even when a petitioner invokes Supreme Court precedent, mere dicta, or even holdings framed at

a "high level of generality," do not qualify as clearly established federal law and therefore cannot justify habeas relief. *Brown v. Davenport*, 596 U.S. 118, 136 (2022).

## LAW AND ANALYSIS

Magistrate Judge Merz's initial R&R recommended dismissing Walker's entire petition and determined that each of his seven grounds was meritless. (Doc. 17). But Walker objected only with respect to his first three grounds for relief. (Doc. 19, #2194–99). On the Court's recommittal order, the Magistrate Judge reconsidered those three grounds for relief. (Doc. 21). And Walker once again objected to the Supplemental R&R's treatment of those three claims. (Doc. 22). The Court accordingly reviews Magistrate Judge Merz's determinations of his first three grounds de novo and his determination of the last four grounds for clear error.

### A.    Ground One: Ineffective Assistance of Counsel

Walker first argues that his counsel was ineffective for failing to consult a crime scene reconstruction[5] expert who purportedly would have concluded that the shooting of Necole was accidental. (Doc. 1, #6; Doc. 16, #2110–16). Both the R&R and Supplemental R&R conclude that Walker's ineffective-assistance-of-counsel claim is meritless because he fails to show that the Ohio Court of Appeals unreasonably

---

[5] Walker also seems to argue the purported trial errors underpinning his other grounds for relief were somehow linked to his trial counsel's ineffective assistance. (Doc. 16, #2110–12 (arguing, for example, that it was ineffective assistance for Walker's trial counsel to "allow" the victim's family members to testify or to "fail[] to protect [Walker's] rights.")). Walker does not develop these arguments, and the Court will address the purported trial errors when discussing his other grounds for relief.

12

applied clearly established federal law. (Doc. 17, #2140–42; Doc. 21, #2203–04). The Court agrees with the Magistrate Judge.

An ineffective-assistance-of-counsel claim requires two showings: first, that the counsel was objectively deficient in the performance of his duties, and second, that such poor performance prejudiced the petitioner (i.e., likely affected the outcome at trial). *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The Ohio Court of Appeals, citing *Strickland*'s standard for an ineffective-assistance-of-counsel claim, concluded that Walker's counsel was not objectively deficient because the decision not to call an expert witness is often tactical, and that such decisions are entitled to deference. *Walker*, 2020-Ohio-1581, ¶¶ 64–66. Walker fails to raise a meaningful challenge to this conclusion. In his reply, Walker states that a crime scene reconstruction expert's testimony was "crucial to showing the order of events and how the accidental shooting actual [sic] occurred." (Doc. 16, #2112). He then further argues in support of that point that "Exhibits D, E, and F clearly shows [sic] that petitioner did not cause the death of the victim." (*Id.* (cleaned up)).

There are multiple problems with this argument. To start, the Court is not sure to which exhibits Walker refers. He attached only three exhibits (which he labels Exhibits A, B, and C) to his reply, (*id.* at #2129–33), none of which establish Walker's innocence nor lay out the "order of events and how the accidental shooting" occurred, (*id.* at #2112). Nor, so far as the Court can tell, were the exhibits to which he is referring attached to Walker's appellate brief before the Ohio Court of Appeals. (Doc. 10, #122–154). And if instead Walker is referencing exhibits submitted during his

jury trial, he essentially must argue that the evidence at trial (the three exhibits he references) showed he was innocent rather than guilty (notwithstanding the jury's disagreement on that point) and that this evidence of innocence (somehow) rendered his trial counsel's tactical decision not to call an expert unreasonable. But if Exhibits D, E, and F themselves prove (as he claims) that he did not commit the charged crimes, then they weaken any claim that his trial counsel's purported failures prejudiced him. If a jury faced with overwhelming evidence of innocence (in the form of Exhibits D, E, and F) still voted to convict, it would be difficult to explain how an expert's explanation of the sequence of events (as a third party to the shooting) based on that same evidence would change that verdict. Lastly, if Walker's exhibits which purportedly show his innocence are instead new exhibits not presented before the proper state courts, this Court not only cannot locate them, but could not consider them in any event as part of his ineffective assistance claim, as they were not properly in the record put before the state court that adjudicated his claims (including the ineffective assistance claim) on the merits. *Pinholster*, 563 U.S. at 181.

Without any evidence of some exonerative expert report available to Walker's counsel at the time, Walker's ineffective-assistance-of-counsel claim boils down to the following syllogism: (i) "I think I am innocent," (ii) "I think a crime scene expert report could have shown my innocence," (iii) "my trial counsel did not call any expert," and therefore (iv) "my counsel was ineffective." With no basis to assess the strength of each step in that chain of reasoning, it is hard to see how the Ohio Court of Appeals' rejection of that argument could constitute an unreasonable application of

*Strickland.*[6] So the Magistrate Judge was right to recommend denying relief on this ground.

Walker's objections do not help him. Between his objections to the initial and supplemental R&R, Walker forwards three arguments: (1) his counsel was ineffective because he promised Walker he would call an expert witness and failed to do so, (Doc. 19, #2195); (2) his counsel was ineffective for failing to call an expert witness because the evidence against Walker was circumstantial, (Doc. 22, #2210); and (3) his counsel was ineffective for failing to call an expert witness because that failure deprived Walker of a "substantial defense," (*id.* at #2211). All these arguments suffer from the same flaw—they focus on rearguing the weight of the evidence that the jury has already passed on rather than explaining how the Ohio Court of Appeals unreasonably applied *Strickland*. The Ohio Court of Appeals held that Walker's trial counsel made a tactical decision which was not objectively unreasonable. Walker fails to show that every fair-minded jurist would disagree with that decision. The Court accordingly **OVERRULES** Walker's objections pertaining to Ground One.

---

[6] In his Traverse, (Doc. 16, #2110), Walker also references *United States v. Cronic*, 466 U.S. 648 (1984), a case in which the defendant raised a claim that the United States constructively denied him the effective assistance of counsel by appointing an inexperienced attorney with little time for him to prepare for the petitioner's trial. *Cronic* is inapplicable where, as here, a defendant is represented by the same attorney for more than two years before his trial. (*See* Doc. 10, #117, 311 (trial court's appointing counsel Perry Ancona, who represented Walker until his appeal)).

## B.    Ground Two: Prosecutorial Misconduct

Walker next argues that the prosecutor deprived him of a fair trial by making improper statements during her closing argument. (Doc. 1, #8; Doc. 16, #2121).[7] Both the R&R and the Supplemental R&R state that Walker has failed to show how the Ohio Court of Appeals unreasonably applied clearly established federal law. (Doc. 17, #2143–45; Doc. 21, #2204–06). The Court again agrees.

The Ohio Court of Appeals stated that, in context, the prosecutor's closing argument that it was not her job to lie to the jury was a benign comment meant to rebut the notion that she had mischaracterized witness testimony. *Walker*, 2020-Ohio-1581, ¶¶ 36–41. It then held that the prosecutor's comment on Walker's lack of remorse was not improper. *Id.* ¶ 43. The Magistrate Judge found that this ruling did not unreasonably apply any Supreme Court case. (*See* Doc. 17, #2144–45 (citing *Darden v. Wainwright*, 477 U.S. 168, 178–183 (1986))).

Walker does not refute this reasoning in his objections. While he does cite some Supreme Court caselaw to lay out the constitutional standard governing improper statements made during a trial, he in no way explains *how* the Ohio Court of Appeals misapplied or contradicted federal law. He accurately cites *Darden v. Wainwright* for the proposition that a prosecutor's comments violate the Constitution when they "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." (Doc. 19, #2196 (quoting 477 U.S. at 181 (cleaned up))). But he does not,

---

[7] Walker also argues the prosecution committed misconduct by knowingly eliciting false testimony from the police officers who testified at trial. (Doc. 16, #2121). That argument was not raised in his appellate brief, (Doc. 10, #131–33), and is procedurally defaulted for the same reasons applicable to his fourth ground for relief. *See infra* Part D.

beyond his unadorned conclusory statements, explain why the prosecutor's statements rendered his trial here unfair under that standard.[8] (*See* Doc. 22, #2212–13 (stating without explanation that the holding that the prosecutor's comments were not improper or highly prejudicial was an unreasonable application of "established Federal Constitutional Law"). And more importantly, he does not explain why no reasonable jurist would disagree with finding that such statements rendered his trial unconstitutionally unfair. Simply, his unsupported statements are not enough to clear AEDPA's hurdle. So the Court **OVERRULES** Walker's objections pertaining to Ground Two.

## C.   Ground Three: Insufficient Evidence

Walker claims there was insufficient evidence to convict him. (Doc. 1, #10; Doc. 16, #2120–28). The R&R and the Supplemental R&R disagree. (Doc. 17, #2145–48; Doc. 21, #2206–07). The Court likewise disagrees with Walker.

Overturning a criminal conviction on the grounds that there was insufficient evidence to convict is difficult, to say the least. To challenge a criminal conviction on such grounds, one must show that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). And when making that assessment, the Court must view the evidence in the light most

---

[8] He does cite a few other Supreme Court cases in his second round of objections, (*see* Doc. 22, #2212), but none of them deals squarely with the scope of the Due Process Clause. *See Johnson v. United States*, 520 U.S. 461 (1997) (deciding on a direct appeal of a federal criminal conviction the scope of the plain-error rule underlying Federal Rule of Criminal Procedure 52); *United States v. Young*, 470 U.S. 1, 6–13 (1985) (applying the plain-error rule under Rule 52 to determine whether allegedly improper statements by a prosecutor during closing argument should have been corrected *sua sponte* by the district court).

17

favorable to the prosecution. *Id.* at 319. But here there is another hurdle. Not only must Walker show no rational trier of fact could have found him guilty, but also that the state court's determination to the contrary—that a jury *could* have constitutionally found him guilty—misapplied clearly established federal law. *See* 28 U.S.C. § 2254(d)(1).

The Ohio Court of Appeals recounted much of the evidence presented at trial—from the text messages between Walker and Necole and her family members in which Walker threatened to kill Necole, to his first statement to the police at the police station during which he confessed to shooting his girlfriend, to Necole's family's testimony that she did not know how to use guns. *Walker*, 2020-Ohio-1581, ¶¶ 56-57. Walker's traverse and objections are full of arguments and claims which boil down to one central contention: the jury should have believed Walker instead of the State.[9] (*See* Doc. 16, #2112 ("All the evidence points to petitioner [sic] discription [sic] of the events."); *id.* at #2113 (Necole's DNA on the gun was "a key piece of evidence that provided the petitioner was telling the truth"); Doc. 19, #2199 (arguing that the family's testimony that Necole did not know how to use a gun was implausible); Doc. 22, #2213–14 (contending that because the State's case rested on circumstantial evidence, his conviction rested on insufficient evidence)). But that is not the stuff of a successful *Jackson v. Virginia* challenge, because the Court must resolve all

---

[9] In fairness to Walker, he does discuss one piece of evidence which does not rely on a favorable credibility determination. He claims that Necole's DNA on the firearm proves his innocence. (Doc. 16, #2114). But neither the jury nor the Ohio Court of Appeals was convinced by this evidence. The Ohio Court of Appeals stated that Walker's multiple days in the home with both the gun and Necole's body allowed for an inference that he transferred her DNA to the gun. *Walker*, 2020-Ohio-1581, ¶ 58. Walker does not refute that reasoning.

inferences in favor of the *prosecution*, not in favor of Walker. So what Walker would need to show before a court reviewing this challenge de novo is that *even when* the Court resolves all credibility disputes in favor of the prosecution, there would still be insufficient evidence to support the elements of the crime charged. And here, Walker would also need to show that no reasonable jurist would disagree that the state court's review under *Jackson* was in error. Walker has not come close to making either showing, so his objections are **OVERRULED**.

*          *          *

The Court overrules all of Walker's objections with respect to Grounds One through Three. With respect to Grounds Four through Seven, however, Walker failed to object to the initial R&R, so the Court reviews the R&R for clear error only.

## D.     Ground Four: Fraud on the Court

Walker argues in his fourth ground for relief that the State committed fraud on the court by calling as witnesses several police officers who purportedly lied on the stand. (Doc. 1, #12; Doc. 16, #2110). The R&R concluded that this ground was procedurally defaulted because it was raised for the first time before the Ohio Supreme Court in Walker's memorandum in support of jurisdiction. (Doc. 17, #2148). The Court finds no error in that determination. A claim raised for the first time on discretionary review before a state's highest court is not "fairly presented" for the purposes of AEDPA's exhaustion requirement. *See Castille v. Peoples*, 489 U.S. 346, 351 (1989) (citation omitted). And a claim that is never fairly presented to the state courts during the time in which it *could* be brought is procedurally defaulted. *See*

19

*Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Assuming Walker's fraud-on-the-court claim relied only on the trial court record, he should have raised it in his initial appeal, *see State v. Cole*, 443 N.E.2d 169, 171 (Ohio 1982), because the Ohio Supreme Court refuses to consider claims not raised in the courts below. *State v. Phillips*, 272 N.E.2d 347, 352 (Ohio 1971). Alternatively, assuming his claim relied on *new* evidence not in the trial court record, Walker should have brought a postconviction petition under Ohio Revised Code § 2953.21. *State v. Carver*, 194 N.E.3d 393, 401 (Ohio Ct. App. 2022). Both avenues are now closed to him, as the Ohio Court of Appeals has denied leave to reopen his direct appeal, (Doc. 10, #298–300), and any postconviction petition would now be untimely.[10] *See* Ohio Rev. Code § 2953.21(A)(2)(a) (requiring postconviction petition to be filed no later than one year after the date the trial transcript is filed in the court of appeals in the defendant's direct appeal); (Doc. 10, #314 (noting that the transcript in Walker's case was filed on July 1, 2019)). Accordingly, under well-established Ohio law, Walker's claim is procedurally defaulted. So the Magistrate Judge did not clearly err, indeed did not err at all, in recommending Ground Four's dismissal.

**E.    Ground Five: Due Process Violation for the Lack of Notice of the Court of Appeals' Decision**

Walker's next claim is that the Ohio Court of Appeals violated his due process rights because it failed to notify him of its decision denying his application to reopen

---

[10] And to the extent Walker has an unexhausted remedy available to him under Ohio Revised Code § 2953.23(A) because he has new evidence confirming his actual innocence, he has forfeited his right to challenge this Court's finding of procedural default because he has failed to raise that argument anywhere in his filings.

his direct appeal until it was too late to appeal as of right to the Ohio Supreme Court. (Doc. 1, #14–15). But as Magistrate Judge Merz stated in his R&R, even assuming this constituted a due process violation, Walker was in no way harmed by this delay because the Ohio Supreme Court *did* consider his appeal. (Doc. 17, #2151). The Ohio Supreme Court first granted him two separate extensions to file an appeal. (Doc. 10, #242, 250). Then, after Walker did so, the Ohio Supreme Court declined to accept jurisdiction. (*Id.* at #283). The Court finds no error in the Magistrate Judge's analysis.

**F.    Ground Six: Consecutive Sentence Contrary to Law**

Walker's sixth ground for relief is that his sentence, which requires him to serve multiple terms of imprisonment consecutively, was contrary to law. (Doc. 1, #15). The R&R states the claim is meritless because it does not rest on an alleged federal constitutional violation. (Doc. 17, #2152). The Court finds no error in that analysis. *See Oregon v. Ice*, 555 U.S. 160, 163–64 (2009); *cf. Sneed v. Donahue*, 993 F.2d 1239, 1244 (6th Cir. 1993). Only claims based on a violation of the United States Constitution are cognizable as grounds for a writ of habeas corpus. *See* 28 U.S.C. § 2254(a).

**G.    Ground Seven: Due Process Violation from the Admission of Prior Bad Acts Evidence at Trial**

Walker lastly argues that the trial court denied him due process by allowing the State to introduce evidence of his and Necole's turbulent history. (Doc. 1, #17; Doc. 16, #2118–19). The R&R states that no Supreme Court precedent holds that a state violates due process by admitting propensity evidence at trial in the form of other bad acts evidence. (Doc. 17, #2153 (citing *Bugh v. Mitchell*, 329 F.3d 496, 512

(6th Cir. 2003))). That is correct. The Magistrate Judge did not clearly err in saying so.

## CONCLUSION

For the foregoing reasons, the Court **OVERRULES** Walker's objections (Docs. 19, 22), and **ADOPTS** the R&R (Doc. 17) and Supplemental R&R (Doc. 21). The Court **DENIES** Walker's habeas petition (Doc. 1).

Under Rule 11(a) of the Rules Governing 2254 Cases in the United States District Courts, the Court also "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Accordingly, the Court **DENIES** Walker a certificate of appealability under 28 U.S.C. § 2253(c) as to all claims because reasonable jurists could not disagree with the Court's adjudication of Walker's habeas claims. *Kuck v. Robinson*, No. 19-3226, 2019 WL 2564578, at *1 (6th Cir. June 10, 2019).

The Court **DIRECTS** the Clerk to enter judgment and to **TERMINATE** this case on its docket.

**SO ORDERED.**

August 1, 2024
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**